IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

CASE NO. 1:19-cr-00531-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IRMA ZAMORANO,

    Defendant.

---

ORDER RE: DEFENDANT'S MOTION TO RECONSIDER
PRETRIAL DETENTION ORDER [#24]

---

This case commenced with Defendant Zamorano's arrest on a Criminal Complaint alleging one count of a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) – possession with intent to distribute a controlled substance (500 grams or more of a mixture and substance containing a detectable amount of methamphetamine). On December 11, 2020, the Court ordered the Defendant detained pending trial after a contested detention hearing.[1] [#11] On April 2, 2020, Defendant filed her Motion to Reconsider Pretrial Detention Order under 18 U.S.C. § 3142(i) ("Motion") [#24],[2] which District Judge Martinez

---

[1] As the Motion notes, the Court determined that the presumption under 18 U.S.C. § 3142(e)(3) did not apply because the matter was before the Court on a Criminal Complaint and the Government had not established the requisite probable cause to trigger application of the presumption. Defendant was subsequently charged by indictment on December 18, 2019, and thus the presumption now applies.

[2] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

referred to this Court for resolution [#25]. The Motion argues that the COVID-19 public health crises is a "compelling reason" for Defendant's temporary release from pretrial detention, and that Defendant has a "verified plan for release that should be implemented in light of these new and compelling developments." In the alternative, the Motion seeks relief under 18 U.S.C. § 3142(f) because Defendant argues that changed circumstances since her detention "undermine this Court's justification" for detention. [#24 at § III.] The Government filed a Response opposing the Motion.[3] [#27.] The Court held a hearing by video-teleconference on April 9, 2020, and took the matter under advisement.

### A. BACKGROUND

On December 5, 2019, Defendant was a passenger, and one of four adult occupants with two juveniles, involved in a traffic stop by the Colorado State Patrol (CSP). A subsequent search of the vehicle discovered 35 bags of methamphetamine with a total gross weight of <u>40.7 pounds</u>. CSP stopped the vehicle acting on an anonymous tip that Defendant and others were transporting illegal narcotics from California to Minnesota and that they were then currently travelling through Colorado. The other occupants of the vehicle included Defendant's daughter and son-in-law, her partner, and two of her grandchildren.

According to the Affidavit [#1-1] in support of the Criminal Complaint, Defendant was interviewed in Spanish after being read her *Miranda* Rights.[4] She "provided a full

---

[3] The Court has considered Defendant's supplement to the Motion filed this morning at #31 and #32.
[4] The Court took judicial notice of the Affidavit in support of the Criminal Complaint, as well as the Pretrial Services Report.

2

confession and claimed possession and knowledge of the suspected methamphetamine located in the Durango." [#1-1 at ¶22.] Specifically, she "detailed how she obtained the narcotics, how the narcotics were situated in the vehicle, and the logistics involved with her transporting the narcotics to Minnesota. [Defendant] related she was being paid $10,000 to transport the narcotics from California to Minnesota and claimed the other occupants in the vehicle did not have any knowledge of the crime." [*Id.* at ¶23.]

After a Detention Hearing held on December 11, 2019, the Court ordered Defendant detained finding that the Government established by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community, and by a preponderance of evidence that no condition or combination of conditions of release would reasonably assure her appearance as required. [#11.] The Court observed that the offense charged is serious, and found, among other things, that the weight of the evidence against Defendant is strong when considering her purported confession; she is subject to a lengthy period of incarceration; she lacked stable employment; and she lacked a stable residence or significant community or family ties to this judicial district and viable transportation. [#11; *see also* transcript of Detention Hearing docketed in 19-mj-00272-STV-1 at #17 ("Transcript").]

If released, Defendant wanted to return to California to live with her daughter. The unverified information from the Pretrial Service's Report ("PSR") indicated that Defendant had only lived with her daughter at her daughter's rental property for one month prior to Defendant's arrest. [#16 docketed in 19-mj-00272-STV-1.] The PSR further suggested

the daughter was herself incarcerated with the possibility of release.[5] The Court was concerned with the fact that the daughter, though not arrested on this matter and apparently not charged, was yet a passenger in the vehicle transporting 40.7 pounds of methamphetamine—Defendant would be returning to live with and among the same individuals whose possible involvement in Defendant's alleged crime was amorphous at best. Her return also would have placed her living with her juvenile grandchildren, two of whom she placed at risk by having them along when transporting 40.7 pounds of methamphetamine across multiple state lines. Further, Defendant is a Mexican citizen, though she has been in the United States most of her life. And the volume of narcotics she purportedly confessed to transporting across the country was significant, and she determined to transport them with her two juvenile grandchildren in tow.

After the Court issued its Order of Detention, Defendant was charged by way of indictment on December 18, 2019, on the charge alleged in the Criminal Complaint. [#15.] Thus, the statutory presumption of detention under 18 U.S.C. § 3142(e)(3) now applies. *Id.* ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . .")

Defendant now moves for release, or temporary release, from her current detention location at the Jefferson County detention center ("Jeffco"). She cites 18 U.S.C. § 3142(i), which provides for the "temporary release" of a person in pretrial custody for a

---

[5] This information regarding the daughter's incarceration was unverified at the time, but nonetheless, was a troubling consideration for the Court.

"compelling reason." The impetus for the requested release is the present national emergency posed by the coronavirus pandemic, coupled with Defendant's medical situation. Defendant is 48 years old. She had a "recent" surgery from which she now suffers chronic pain and is morbidly obese. Defendant argues these circumstances "make her particularly medically vulnerable to COVID-19." Defendant further seeks to reopen her detention hearing under 18 U.S.C. § 3142(f) because "circumstances have changed" in "two significant ways" that now warrant her release: (1) she has a verified and stable residence in California and transportation between that residence and Colorado; and (2) two parties are willing to serve as third-party custodians. At the hearing, Defendant further argued that the circumstances involving COVID-19 are an additional changed circumstance warranting reopening of her detention hearing and her ultimate release on conditions.

## B. ANALYSIS

The district court has been inundated with motions like Defendant's that seek reopening or reconsideration of prior detention decisions because of COVID-19 and the dangers it presents to the incarcerated. Too often these requests fall short because they fail to address the points under the law that bear on the judicial officer's detention decision, *to wit*, whether the defendant presents a danger or a risk of flight that may be reasonably assuaged by the imposition of conditions of release. 18 U.S.C. § 3142. *See, e.g., United States v. Barraza*, Civil Action No. 19-cr-00235-RM (Order Denying Second Motion for Emergency Release, ECF. 130) ("He is not less of a flight risk or danger because of COVID-19.") Defendant's Motion is an improvement upon those similar

motions reviewed by the Court to date, but it too dedicates abundant pages to broad descriptions of the history of COVID-19, the government's response, international responses, and actions taken by an array of judges in numerous other judicial districts to release pretrial or other detainees. Very few portions of the Motion address the pertinent legal case, which is, in consideration of the "compelling reasons" or "changed circumstances" advanced by Defendant, does Defendant continue to pose a risk of flight or danger which may be reasonably ameliorated by conditions of release. Add to this that there is now a rebuttal presumption under § 3142(e) that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community, which Defendant has not directly addressed.

### 1. Temporary Release under § 3142(i)

Defendant seeks temporary release under § 3142(i). She argues that temporary pretrial release: (1) will protect Defendant, the prison population, and the wider community during the COVID-19 pandemic because there is already COVID-19 in Jeffco and Defendant's age and health make her more vulnerable to contracting the virus; and (2) Defendant has a verified plan for release that should be implemented in light of these new and compelling developments.

Recent decisions in other districts have outlined a helpful framework for analyzing assertions of COVID-19 as a compelling reason for release under § 3142(i), which consider the following:

1. the original grounds for the defendant's pretrial detention;
2. the specificity of the defendant's stated COVID-19 concerns;

3. the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and;

4. the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (denying defendant's emergency motion for release due to possibility of a COVID-19 outbreak) (citing *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020)).

While the Court is sympathetic to Defendant's genuine concerns regarding the spread and medical management of COVID-19 at Jeffco, the Court does not find that these concerns support compelling reasons for her temporary release under § 3142(i). On the first consideration, the grounds supporting the original Order of Detention are strong for the reasons described above and in the detention order.

As to the second consideration, on July 27, 2018, 16 months prior to the December 11, 2019 Detention Hearing, Defendant presented to her doctor with a chief complaint of abdominal pain. [#24-2.] The doctor noted that Defendant was "fairly healthy otherwise except for problems with morbid obesity. . .". [*Id.*] She underwent gallbladder surgery the following month, on August 30, 2018. [*Id.*] In her Motion, Defendant argues that "[s]ince she arrived at the Jefferson County detention center, [she] has experienced severe abdominal pain, which she believes is related to complications from her surgery." [#24 at p.9.] But the surgery occurred 15 months prior to Defendant's Detention Hearing. Defendant proffered no arguments concerning her health or ongoing pain at her Detention Hearing. [*See generally* the hearing transcript.] Further, the PSR states that Defendant

reported "she is in good physical health," but she did "mention[ ] she did have surgery on her gall bladder and it sometimes gives her pain" for which she was not taking any prescribed medications. [#24-2.] Defendant simply does not explain how her ongoing pain from her surgery in August 2018 places her at a higher risk of contracting COVID-19. Nor does her prior gall bladder surgery or ongoing pain from it currently fall into a category the Centers for Disease Control and Prevention ("CDC") considers to be at high risk.[6] Further, she is 48 years old, which is younger than the age group that the CDC currently considers to be at high risk.[7]

While the CDC does currently place "severe obesity" in the higher-risk category, Defendant presented no compelling evidence to suggest that this risk alone warrants her temporary release. The Jefferson County Sheriff's Office has taken a series of steps that include "employee-related changes" and "inmate-related changes" at its facilities in order to reduce the spread of COVID-19.[8] And Defendant confirmed at the hearing that although 36 individuals in custody at Jeffco are quarantined (according to Defendant), there are currently no confirmed cases of COVID-19 among any detainees at the facility. Thus, Defendant's stated COVID-19 concerns lack the requisite specificity to rise to the compelling.

The third and fourth considerations are unavailing for similar reasons. While Defendant proposes a specific release plan, she fails to demonstrate how that plan would

---

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed 04/09/2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed 04/10/2020)
[7] *Id.*
[8] *See* https://www.jeffco.us/4010/ALERTS-COVID-19 (last accessed 04/09/2020).

mitigate the risk of infection to herself or others. Indeed, because she seeks release to California, a state knee-deep in efforts to control the spread and flatten its curve, Defendant's release would create the situation of her being forced to travel interstate to appear as required in this judicial district. Defendant proffered no evidence of how that circumstance does not create a potentially greater risk to the community or herself in terms of contracting or spreading the virus. For these reasons, on the record presented, Defendant has failed to establish a compelling reason for her temporary release under § 3142(i).

Defendant also argues that her temporary release is necessary to effectuate her Sixth Amendment right to effective assistance of counsel. She only cites Jeffco's restriction on in-person legal visits (but acknowledges the facility does have a phone procedure for attorney visits) and argues that the "disruption this causes to the attorney-client relationship, and counsel's ability to effectively represent [Defendant], cannot be understated." [#24 at p.9.]

A defendant is denied the effective assistance of counsel when counsel's performance falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). "In short, a defendant's Sixth Amendment right to counsel is violated when counsel's performance is both 'deficient' and 'prejudicial.'" *United States v. Munoz*, 977 F.2d 597, at *1 (10th Cir. 1992) (Table) (quoting *United States v. Miller*, 907 F.2d 994 (10th Cir. 1990)).

First, defense counsel stated at the hearing that the Office of the Federal Public Defender ("FPD"), who employs her, has either a policy or directive for its attorneys to avoid in-person meetings with their clients. Thus, the fact that Jeffco does not allow in-person attorney visits is a *non sequitur*. Second, Defendant offers no evidence that her attorney's representation has fallen below an objective standard of reasonableness or has otherwise been deficient based on a lack of in-person contact. And the most current evidence is to the contrary. Defendant's counsel has very capably and zealously advocated for Defendant's temporary release from pretrial detention. She filed a well-written motion, included exhibit attachments, and ably presented argument and evidence at a hearing on the Motion. Further, the Motion describes counsel's out-of-court efforts to verify a suitable residence, transportation, and third-party custodians for her client in support of the Motion. There is simply no evidence that the temporary limitations on attorney communications (whether self-imposed by the FPD or imposed by Jeffco) have caused counsel's performance to fall below an objective standard of reasonableness. The Court does not find that Defendant's ongoing pretrial detention violates her right to effective assistance of counsel or provides a basis for temporary release under § 3142(i).

### 2. Reopening of Detention Hearing under 18 U.S.C. § 3142(f)

Defendant argues that changed circumstances warrant her release, those being (1) she now has a verified and stable residence in California and transportation, and (2) she has two individuals willing to serve as third-party custodians.

Under § 3142(f), a detention hearing may be reopened:

> at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a

> material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B). The purpose of this provision is to allow parties to present new information that increases the likelihood a defendant would appear in court or decrease the potential danger a defendant poses to an individual or the community. *See United States v. Munguia*, No. 3:19-cr-191-B (03), 2020 WL 1471741, at *2 (N.D. Tex. Mar. 26, 2020) (quoting *United States v. Martin*, No. 13-00466 JSW (KAW), 2015 WL 1738362, at *2 (N.D. Cal. Apr. 13, 2015)). Courts interpret this provision strictly. *United States v. Young*, No. 2:13-cr-00149-KJD-CWH, 2014 WL 11380770, at *2 (D. Nev. Feb. 25, 2014). This is because "[t]here are very few proceedings in federal practice which encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held." *United States v. Flores*, 856 F. Supp. 1400, 1406 (E.D. Cal. 1994). To be sure, "[a] rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice." *Id*.

To the extent Defendant also argues COVID-19 and its possible presence in Jeffco as a changed circumstance, the Court is not convinced "the COVID-19 pandemic is a 'material change of circumstances' warranting a renewed evaluation of [a] prior detention order" without more. *United States v. Banks*, 4:19CR3116, 2020 WL 1450549, at *1 (D. Neb. Mar. 25, 2020) (denying defendant's motion for release). But even assuming the novel virus is a "material change in circumstances," the COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still

consider the Section 3142(g) factors. *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (explaining that "as concerning as the COVID-19 pandemic is," a court must nonetheless conduct "an individualized assessment of the factors identified by the Bail Reform Act"). For the reasons discussed above, Defendant has failed to demonstrate that, under her circumstances, COVID-19 has a "material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Concerning her now verified plan for release involving third-party custodians, the Court agrees with the Government that this is not new information that was unknown to the Defendant at the time of her detention hearing. The test is whether the information itself was unknown at the time of the hearing, not whether a plan of release has now been "verified" or a relative or acquaintance is now willing to serve as a third-party custodian. *See Young*, 2014 WL 11380770, at *3 (denying motion to reopen detention hearing in part because defendant's mother's willingness to serve as third party custodian "could have been presented at the time of the detention hearing and cannot be considered new information at this time."); *United States v. Bowens*, No. CR-07-544-2-PHX-ROS (ECV), 2007 WL 2220501, at *3 (D. Ariz. July 31, 2007) (finding that the existence of a third-party custodian does not constitute a material change sufficient to justify re-examination of defendant's detention); *see also United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (holding that defendant's proffered testimony from his mother, sister and a friend was not "new information" within the meaning to § 3142(f)); *United States v. Cervantes*, No. 06-

CR-00431-MSK, 2007 WL 685699, at *2 (D. Colo. January 3, 2007) (information about the defendant's ties to the community, age, and background were not new information that was not known to the defendant at the time of the original detention hearing); *United States v. Ward*, 235 F. Supp.2d 1183, 1185 (N.D. Okla. 2002) (in denying a motion to reopen the issue of pretrial detention, observed that "the proffered information about [d]efendant's background, ties to the community and employment history were all known" at the time of the detention hearing).

Here, at the time of the Detention Hearing, the PSR indicated that the Probation Office attempted to verify the Defendant's personal information by contacting her partner, but those attempts were unsuccessful. The Court made inquiries of the Probation Officer and defense counsel at the Detention Hearing regarding the suitability of the home in California where Defendant would live with her daughter if released. The Probation Officer informed the Court that no inspection had been done of the California home, and defense counsel confirmed that "the person [Defendant would] be returning to live with is her daughter." Defendant further argued for her release to a halfway house, stating her view that a halfway house could potentially serve as an interim step toward later modifying the conditions of release to allow her to return to the California home once or if information could be properly verified. The Court rejected this argument as unconvincing to reasonably assure Defendant's appearance as required based on the record.

When the Court asked defense counsel at the hearing on the Motion why no information was presented about these individuals and their ability to serve as third-party custodians at the Detention Hearing, counsel responded that they did not have contact

13

information for them at the time. The Court finds this inadequate to now characterize this information as "new" simply because contact and inquiries have now been made that were not made, but could have been made, before. *See, e.g., Flores*, 856 F. Supp. at 1406. Defendant did not seek to reopen her Detention Hearing in consideration of her daughter and partner serving as third-party custodians until over three months later, despite maintaining relationships with these individuals both before, during, and since the Detention Hearing. As the Government argues, the possibility of Defendant's release to California to live with a family member or acquaintance was discussed during the Detention Hearing; rather than request a continuance to explore these options further or to give pretrial more time to verify, the Defendant chose to proceed with the Detention Hearing on December 11, 2019.

### C. CONCLUSION

Defendant has raised genuine concerns over her pretrial detention during a pandemic. These are real concerns and the Court remains sympathetic. But the Court also remains duty-bound to evaluate detention decisions under the particulars of the Bail Reform Act. Defendant has failed to establish a basis for her temporary release under 18 U.S.C. § 3142(i) or a basis to reopen her detention hearing under 18 U.S.C. § 3142(f). IT IS ORDERED that the Motion is DENIED.

The parties are further advised that, pursuant to Fed. R. Crim. P. 59(a), a party may serve and file objections to this Order within 14 days after being served with a copy of the same; failure to object in accordance with Rule 59(a) waives a party's right to review.

DATED: April 10, 2020

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge