**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-531-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**IRMA ZAMORANO,**

    Defendant.

---

## ORDER AFFIRMING MAGISTRATE JUDGE'S DETENTION ORDER

---

The Government charges Defendant Irma Zamorano with one count of possessing with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  (*See* ECF No. 15.)  On December 11, 2019, U.S. Magistrate Judge S. Kato Crews ordered that Zamorano be detained pending trial.  (ECF No. 11.)  On April 10, 2020, Judge Crews denied Zamorano's motion for reconsideration of that order in light of the COVID-19 pandemic.  (ECF No. 35.)  Currently before the Court is Zamorano's Motion to Revoke Pretrial Detention Order Pursuant to 18 U.S.C. § 3145(b), filed on April 27, 2020 (ECF No. 39), and her Emergency Motion for Order on Defendant's Motion to Revoke Pretrial Detention Order (ECF No. 43), filed early this morning.

No hearing is necessary to resolve these motions.  For the reasons explained below, the Court finds that Zamorano's detention continues to be appropriate and the

Court has no power, under the circumstances, to release her temporarily. The Court therefore leaves Judge Crews's April 10, 2020 order undisturbed.

## I.   DETENTION PRESUMPTIONS & STANDARD OF REVIEW

**A.   Initial Standard**

The Court "shall order the detention of the [defendant] before trial" if the Court finds, after a hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "Subject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed * * * an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." *Id.* § 3142(e)(3)(A). This presumption applies to Zamorano given the quantity of drugs she is charged with trafficking.

"Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced." *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991)

"The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id.* § 3142(f)(2). As for risk of flight, the burden is preponderance of the evidence. *United States v.*

*Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The Government bears the burden in both cases. *Id.*

The factors the Court "shall" consider when deciding whether to grant pretrial release are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking of minors], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Also, the presumption of detention, even if countered by the defendant with adequate evidence, "remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355.

**B.    Reopening**

If the judicial officer detains the defendant, the defendant may ask the judicial officer to revisit that conclusion under certain circumstances.

First, the defendant can argue that relevant information, not previously known,

3

has come to light:

> The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2).

Second, the defendant may argue that preparation of a defense or other "compelling" circumstances justify "temporary release":

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

*Id.* § 3142(i).

**C.     Review**

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the [district court], a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The district judge then reviews the magistrate judge's decision *de novo*. *Cisneros*, 328 F.3d at 616 n.1.

> *De novo* review, however, does not necessarily mean holding an evidentiary hearing.  Although a district court may start from scratch and take evidence, it may also review the evidence that was before the magistrate judge and make its own independent determination as to whether the magistrate judge's findings and detention order are correct.  This is a matter of discretion for the district court.

*United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal quotation marks and citations omitted).

## II.  BACKGROUND

On December 5, 2019, the Colorado State Patrol, acting on a tip about a narcotics shipment from California to Minnesota, pulled over a car with four adult occupants and two juveniles.  (ECF No. 35 at 2.)  A search of the car yielded 40.7 *pounds* of methamphetamine.  (*Id.*)  Zamorano, after being read her *Miranda* rights, took responsibility for the drugs, claiming that the other occupants of the car—her partner, her daughter and son-in-law, and two grandchildren—had no knowledge of them.  (*Id.* at 2–3.)

On December 11, 2019, Judge Crews held a detention hearing and concluded that pretrial release was inappropriate because the weight of the evidence against Zamorano was strong, she is subject to a lengthy period of imprisonment if convicted (*i.e.*, a ten-year mandatory minimum), she lacks stable employment, she has no residence, community ties, or family ties in this judicial district (she lives in California), she has significant family ties outside the United States, she lacks legal status in the United States, and her background information was unknown or unverified.  (ECF No. 11 at 2–3.)  Specifically as to Zamorano's proposal that she return to California to live with her daughter pending trial, the information before Judge Crews about that possibility was sketchy and Judge Crews was less than convinced that the daughter had no role in or knowledge of transporting 40.7 pounds of methamphetamine.  (ECF No. 35 at 3–4.)  Thus, Judge Crews ordered that Zamorano remain detained pending trial.  Zamorano did not challenge that order.

As is well-known, COVID-19 became a worldwide pandemic in the last few of months, with the effects in Colorado becoming especially acute beginning in mid-March 2020.  On April 2, 2020, Zamorano moved for reconsideration of her detention, arguing

that conditions in the Jefferson County Detention Center (to which the parties and the Court frequently refer as "Jeffco") are unsuitable to avoid infection, and that her "age (48), recent surgery [referring to a gallbladder removal in 2018], chronic pain [referring to abdominal pain Zamorano believes is related to the gallbladder removal], and morbid obesity make her particularly medically vulnerable to COVID-19." (ECF No. 24 at 2, 9.) Zamorano invoked 18 U.S.C. § 3142(i)'s authorization for temporary release, specifically the "compelling reason" prong. (*Id.* at 1, 2, 12; *see also* Part I.B, above.) Also, without specifically grounding the argument in § 3142(i)'s other prong ("necessary for preparation of the person's defense"), she argued that her right to effective assistance of counsel was being negatively affected. (ECF No. 24 at 9.) This was because, she said, she is limited to telephone visits with her attorney, given that Jeffco now prohibits in-person legal visits and "technological alternatives to in-person meetings, such as FaceTime and Zoom, are not available." (*Id.*)

Finally, Zamorano argued that the § 3142(g) factors (*see* Part I.A, above) now weigh in her favor, largely because (1) her living arrangements in California—either with her daughter or her partner—are now "verified," in contrast to the December 2019 detention hearing, and (2) COVID-19 changes the overall calculus. (*Id.* at 2, 3, 4–6, 12–15.)

Judge Crews rejected these arguments. First addressing the "compelling reason" prong of § 3142(i), Judge Crews stated that neither Zamorano's age nor gallbladder surgery (with potential lingering pain) make her at higher risk of a severe case of COVID-19, per guidance from the Centers for Disease Control and Prevention ("CDC"). (ECF No. 35 at 7–8.) As for severe obesity, Judge Crews acknowledged that it is among current CDC risk factors, but Zamorano "presented no compelling evidence

to suggest that this risk alone warrants her temporary release." (*Id.* at 8.) Judge Crews accepted the Government's representation that "there are currently no confirmed cases of COVID-19 among any detainees at [Jeffco]." (*Id.*) Finally, Judge Crews found that Zamorano had not dispelled an inference that returning to California—itself struggling with COVID-19—and traveling to and from California for court appearances might create a greater risk of contracting and/or spreading the disease. (*Id.* at 8–9.)

As for Zamorano's concerns about assistance of counsel, Judge Crews found "[t]here is simply no evidence that the temporary limitations on attorney communications . . . have caused counsel's performance to fall below an objective standard of reasonableness." (*Id.* at 10.)

Judge Crews treated Zamorano's proposed re-weighing of the § 3142(g) factors as an invocation of § 3142(f)(2)'s authorization to "reopen[]" the detention hearing based on new information "that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." (*Id.* at 10–11; *see also* Part I.B, above.) Judge Crews was "not convinced" that the COVID-19 pandemic, "without more," changed the relevant calculus. (ECF No. 35 at 11.) Regardless, he disagreed with Zamorano's view that the § 3142(g) factors could be re-weighed in the manner Zamorano suggested. (*Id.* at 11–12.) He also concluded that the "verification" of Zamorano's plan to live with her daughter or her partner in California was not information "not known to the movant at the time of the hearing," and therefore not appropriate to consider under § 3142(f)(2). (*Id.* at 12–15.)

For these reasons, Judge Crews concluded, for the second time, that Zamorano

7

should not be released from detention pending trial.

## III.  ANALYSIS

Zamorano's Motion to Revoke largely re-urges her arguments made to Judge Crews, still emphasizing § 3142(i)'s "compelling reason" prong but highlighting (among other things) that Judge Crews's presumption of no confirmed detainee cases of COVID-19 at Jeffco is suspect due to cases of possible detainee exposure. (See ECF No. 39 at 5.) Zamorano's Emergency Motion for Order, filed this morning, reports new data showing twenty-five confirmed detainee cases at Jeffco. (ECF No. 43 ¶ 2.) Zamorano's Motion to Revoke also makes a more elaborate argument under § 3142(i)'s "necessary for preparation of the person's defense" prong.

Section 3142(i) presumes that a person is properly detained under § 3142(e)–(g) but the need to prepare a defense or some other compelling reason (*i.e.*, beyond those already considered under § 3142(g)) nonetheless warrants temporary release. In this light, and because the Court reviews Judge Crews's order *de novo*, the Court finds it prudent to first analyze Zamorano's arguments that the § 3142(g) factors now weigh in favor of pretrial release, accounting for the rise of COVID-19 and the "verification" of potential living arrangements in California. The Court will then analyze whether § 3142(i) nonetheless counsels in favor of temporary release in light of Zamorano's medical risk factors or the need to prepare a defense.

### A.     Section 3142(g)

####    1.     Risk of Flight

Invoking § 3142(g)(3), which allows the Court to take the defendant's physical condition into account when assessing flight risk and danger to the community, Zamorano argues that she is much less of a flight risk because she is "higher-risk for

8

serious illness from COVID-19." (ECF No. 39 at 11.) In a similar vein, she argues that "during this COVID-19 pandemic, travel is severely restricted." (*Id.*)

The Court gives these considerations little weight. Many people are *avoiding* travel, but the Court has seen no evidence that "travel is severely restricted." Zamorano points to no instance of anyone's travel in California being restricted to this degree, *e.g.*, being pulled over on suspicion of traveling for a purpose unapproved by a relevant stay-at-home order, or being cited for visiting someone else's home. As for Zamorano's higher risk of serious illness, the Court frankly cannot trust Zamorano to make good risk-based decisions. If everything in her confession is true, then she knowingly invited her unwitting partner, daughter, son-in-law, and two grandchildren to accompany her on a long road trip to deliver almost 41 pounds of methamphetamine. That course of conduct alone demonstrates a high tolerance for putting herself and others at risk.

Zamorano also re-emphasizes her proposed living arrangements with her daughter or with her partner, either of which allegedly make her less of a flight risk. (ECF No. 39 at 12–13.) The Court agrees with Judge Crews, however, that this is not information "that was not known to the movant at the time of the [December 2019 detention] hearing." 18 U.S.C. § 3142(f)(2). It is simply more detail than previously presented.

Even if the Court were to consider this supposedly new information, the Court is not convinced that Zamorano would not be a flight risk. Zamorano's arguments appear to presume that COVID-19 gives her a strong incentive to stay put. Indeed it does—but not necessarily in her daughter's or partner's residence.

The question before the Court is *not* whether Zamorano will "flee" (in the colloquial sense of rapidly moving from place to place to evade law enforcement), but

9

whether there exists a "condition or combination of conditions [that] will reasonably assure [her] appearance" here in Colorado when needed.  18 U.S.C. § 3142(e)(1).  Hiding from law enforcement and social distancing are not mutually exclusive.  Zamorano faces a mandatory ten-year prison term, and she may also face deportation.  She has a strong incentive to disappear.

The Court also concurs with Judge Crews's initial assessment that Zamorano's daughter's and partner's alleged lack of knowledge about the methamphetamine in the car somewhat strains credulity.  The Court therefore has reason to distrust her daughter and her partner, and therefore reason not to appoint either one as her custodian.

For these reasons, the Court finds that a preponderance of evidence still exists "that no condition or combination of conditions will reasonably assure the appearance of the person as required."  18 U.S.C. § 3142(e)(1).

2.     Community Danger

Given the foregoing, detention is required and the Court need not analyze community danger.  Nonetheless, the Court notes the following.

First, Zamorano claims that she "does not pose a danger to the community such that releasing her would be more dangerous than keeping her detained where she is exposed to significant danger."  (ECF No. 39 at 14.)  But comparative danger—*i.e.*, danger to the community if released versus danger to the defendant if confined—is not a § 3142(g) factor.

Second, Zamorano obtained 41 *pounds* of methamphetamine from *someone* in California.  There is no reason to believe that she could not, upon her return to California, reconnect with her drug source(s), thus furthering the distribution of this highly dangerous controlled substance.

Accordingly, if the Court were required to so find, the Court would find that clear and convincing evidence exists of community danger.

**B.     Section 3142(i)**

Having found that Zamorano must be detained, the Court may now evaluate whether it will nonetheless "permit [her] temporary release" because it is "necessary for preparation of [her] defense or for another compelling reason."  18 U.S.C. § 3142(i).

Regarding preparation of a defense, Zamorano's counsel represents that she cannot visit Zamorano in Jeffco due to jail restrictions on in-person visits,[1] and that "technological alternatives to in-person meetings, such as FaceTime and Zoom, are not available to Ms. Zamorano [in Jeffco]."  (ECF No. 39 at 10.)  This ignores the most obvious technological alternative to an in-person meeting: the telephone.

As to that, counsel states (for the first time in the reply brief) that Jeffco "is currently inundated with requests for legal calls and [is] unable to timely facilitate all of those requests."  (ECF No. 42 at 3–4.)  The Court is confident that the same would be true for video communication, such as through FaceTime or Zoom.  And in any event, it is an argument that counsels in favor of releasing all or most Jeffco detainees, because presumably all or most of them are experiencing the same problem.  The Court is unwilling to countenance an argument which, if accepted, would effectively "open the doors" of a detention facility to all desiring to bring to an end their period of confinement at that location.[2]

---

[1] Presumably there would also be no in-person visits if the Court released Zamorano to her daughter's or her partner's home in California, because the Court further presumes that Zamorano's counsel would not, under the circumstances (and perhaps even under normal circumstances), be traveling to California to meet with her client.

[2] To be clear, the Court would *welcome* a decision by the various sheriffs, wardens, etc., to exercise their *discretion* to release many more detainees and prisoners to home confinement.

11

But counsel goes on to say that "[a]ll 592 inmates at Jefferson County rely on the same phones to place and receive calls to communicate with their lawyers. Those phones, and the rooms where the phone[s] are located, are not disinfected between each use. Ms. Zamorano must choose between infection and assistance of counsel." (ECF No. 42 at 4–5.) The Court is sympathetic to this argument, but unless Zamorano is particularly susceptible to a severe case of COVID-19, it is again an argument that counsels in favor of releasing all or most Jeffco detainees.[3] Thus, the Court must address Zamorano's *individual* susceptibility to a severe case of COVID-19.

Zamorano is 48 years old. Although the Court understands that there have been many COVID-19 hospitalizations of middle-aged persons such as Zamorano, the CDC's guidance continues to list age 65 as the threshold for "higher risk for severe illness," at least based on age alone. *See* CDC, "People Who Are at Higher Risk for Severe Illness," *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed May 15, 2020) ("CDC Guidance").

Zamorano is also 59" tall (*i.e.*, 4'11") and weighs 226 lbs. (ECF No. 39-5 at 4.)[4] Her body mass index is therefore 45.6, which is well above the BMI 30 threshold for obesity. Her doctor has noted her "morbid obesity." (*Id.*) The CDC currently lists "severe obesity (body mass index [BMI] of 40 or higher)" as a risk factor regardless of age, "particularly if not well controlled." CDC Guidance, *supra*. Zamorano's doctor says that Zamorano "is fairly healthy . . . except for problems with morbid obesity." (ECF No.

---

[3] Alternatively, it is an argument for invoking some other power of the Court (*e.g.*, 18 U.S.C. § 3142(i)(3), 42 U.S.C. § 1983) to require Jeffco to sanitize its phones between uses.

[4] This information comes from a record of a medical visit on July 27, 2018, but it is the same information Zamorano relies on to support her current description of herself as "morbidly obese." (ECF No. 39 at 9.) The Court therefore presumes the information is still accurate.

12

39-5 at 4.) It is unclear whether this means that her morbid obesity is "well controlled" (if it is possible for morbid obesity to be well controlled). The Court will therefore give Zamorano the benefit of the doubt that her obesity puts her at higher risk for a severe case of COVID-19, at least as compared to slimmer detainees.

Even so, if the Court were to order Zamorano's temporary release—either to facilitate her access to counsel by preventing her from having to use an unsanitized telephone, or because her susceptibility to a severe case of COVID-19 is "another compelling reason"—it may only order her release into "the custody of a United States marshal or another appropriate person." 18 U.S.C. § 3142(i). The U.S. Marshal does not take detainees into overnight custody—that is why Zamorano is in Jeffco (by agreement with the U.S. Marshal), and not in some pretrial detention facility run by the U.S. Marshal (which, if one existed, would likely be subject to the same arguments Zamorano makes against Jeffco). So the U.S. Marshal would not be an "appropriate person" into whose custody Zamorano could be released.

The only other proposed "appropriate person[(s)]" are Zamorano's daughter or partner. But "appropriate" surely implies that the person is capable of preventing the risk of flight and community danger that justifies detention in the first place. For the reasons already explained above, Zamorano's daughter and partner (themselves, and by virtue of their location in California) fall far short of meeting this standard. Thus, the Court may not permit Zamorano's temporary release under § 3142(i).

## IV. CONCLUSION

For the reasons set forth above, Zamorano's Motion to Revoke Pretrial Detention Order Pursuant to 18 U.S.C. § 3145(b) (ECF No. 39) is DENIED, Zamorano's Emergency Motion for Order on Defendant's Motion to Revoke Pretrial Detention Order

(ECF No. 43) is DENIED, and Judge Crews's April 10, 2020 detention order (ECF No. 35) is AFFIRMED.

Dated this 15th day of May, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge